By the Court,

Marcy, J.
If a court of oyer and terminer have not the power to grant a new trial in any case on the merits, the defendant is remediless, however erroneous may have been his conviction. The advice of this court cannot confer authority. Whatever we may think of the merits of the cause as disclosed in the case ; whatever opinion we may entertain of the views of the court on the law, the communication of our sentiments on these matters can give that court no new powers. Whenever this court gives its advice to any magistrate or tribunal, it must be considered as relating to the exercise of the authority already possessed, and not by way of enlarging old or conferring new powers.
The distinction between advisory and mandatory communications, is too obvious to require elucidation.
The question then in this case is, whether a court of oyer and terminer can grant a new trial except for irregularity. If it is an inferior court, it probably cannot. The case of The People v. The Justices of the Sessions of Chenango, 1 Johns. C. 179, seems to deny to all courts of inferior jurisdiction the right to grant new trials on the merits, where that right is not given by the power instituting them.
*40 I cannot, however, bring myself to consider the courts of 0yer an<j terminer, as they are organized under our system of jurisprudence, inferior tribunals. As criminal courts, they have general jurisdiction. They have not only power, but exclusive power to try the highest offences; all offences involving-the life of the accused. They award the severest punishments. These powers are attributes of superior courts. There is some obscurity hanging about the origin of these courts in this state, that I have not been able to remove. Indeed I have not taken much pains to do so, because I have not considered that labor necessary, to bring us to a right conclusion in this case. If “ the act to settle courts of justice,” found in the 2d R. L. of 1813, Appendix 8, was ever in operation here, as an effective law, then the first court of general jurisdiction, established under the colonial government of this state, was an oyer and terminer and general gaol delivery.
That there might not be (as was expressed in that act,) a defect of justice, but that all the inhabitants of the province might enjoy all proper ways and means to have their just rights within the same according to law, it provided that there should be annually in each county of the province, a court of oyer and terminer and general gaol delivery, which should have power and jurisdiction to try, hear and determine all matters, causes and cases, capital, criminal or civil; and causes and trials at common law, in and to which court all persons whatsover might remove any action, or suit, debts, &c. and by warrant, writ of error, or certiorari, remove out of any inferier court any judgment, information or indictment there pending, &c. This act bears date in 1683. The ordinance establishing the supreme court was passed several years subsequent to that time. The powers given to this latter court are very ample, but I think not sufficiently so to embrace all those which were given to the court of oyer and terminer, established with the jurisdiction specified in the act to which I have referred.
The supreme court was vested with the powers of the English king’s bench, common pleas and exchequer, and *41 had a right expressly given to it to remove causes by certiovari, habeas corpus, or any other lawful writ, out of the mayoy’s court, sessions of the peace or common pleas. No authority was given to the supreme court, when it was organized, over the oyer and terminer, if such a court existed at that time ; and I am not aware that any has since been expressly given, until the recent revision of our statute laws ; yet the supreme court has for a long time exercised a control to some extent, over courts of oyer and terminer. Writs of certiorari have repeatedly issued from the former to the latter, to remove the proceedings pending before them. One issued as early as 1794, in the case of the People v. Ludlow, Coleman’s Cases, 34. It was not permitted to be filed with the return, but this was not because the power of the court to issue such a writ was doubted or questioned, but on account of its irregular allowance. The transferring of the proceedings of courts of oyer and terminer to the supreme court by certiorari, has been practiced ever since, and is of every day’s occurrence.
The exercise of this power at an early period, and its condinuance down to the present time, induced me to doubt whether the act referred to had ever been a subsisting law; and this doubt was somewhat strengthened by the unauthentic form in which it appears in the statute book; but, upon further examination, I have been obliged to discard this doubt. It is mentioned in Smith’s History of New-York, as a valid law. The author, who was a distinguished judge of the supreme court under its colonial organization, seems to question, as well he might., the power of the governor and his council to modify by an ordinance, as they did, in 1691, the courts established by that law. The power they exercised was so long submitted to that it would be now quite late to assert its illegality. Considering it to be legal it did not, nor was it designed, as I can learn, to supersede the jurisdiction of the oyer and terminer in criminal cases. I think it is not fanciful to derive the origin of our present courts of oyer and terminer from this law.
But if in this I should be wrong, and we are to look to the English system for their origin, it would not be safe to infer *42 that the courts of this description, in the two counties, possess and exercise similar powers at this day. The practice here has greatly differed from that in England on the subject gracing new trials; and the decision of her courts, on this subject, would be'unsafe guides for us to follow.
It is a settled rule of law in England never to grant a new trial in cases of felony and treason. If by the error of the jury or the judge, an innocent man is condemned, he is sent to the mercy of the crown for redress. This mercy is but a miserable relief for the injury he has suffered. It may save his property from forfeiture, and himself from the ignominy of the gallows, but the foul blot remains on his reputation. Time does not obliterate it; the grave does not cover it; it is an inheritable curse that must and will be the portion of his posterity. It is mockery to tell a man who has been unjustly condemned that his redress is in a pardon. He feels and ever will feel that he has received an incurable wound from that sword which he in common with his fellow citizens had put into the hands of the magistracy for their protection. The policy in respect to new trials in criminal cases which the English courts have pursued has never been countenanced by our courts, and would never be tolerated by our people.
By the revised stalutes, provision is made for enabling defendants in criminal prosecutions, to revise and correct the errors of courts by allowing exceptions to be taken to their opinions. 2 R. S. 736, § 21. Though this is a new mode of granting relief to a citizen, who thinks he has been injured, it does not warrant the inference that he was wholly without relief before. The case of the People v. Townsend, Coleman's Cas. 68, S. C. 1 Johns. Cas. 104, was much relied on by the counsel for the defendant, to shew that the courts of oyer and terminer had the right, and had exercised it, of granting new trials on the merits. In that case, as in this, the defendant had been convicted on an indictment for perjury. The judge who presided at the trial, reported that the verdict was against evidence. This court gave it as then-opinion, or as their advice, that there must be a new trial, and directed their views to be communicated to the court of oyer and terminer. The case of the People v. Townsend, it *43 will be observed, was never a pending suit in the supreme court. It is true that a certiorari to remove the proceedings had been issued, but it had not been returned and filed, and until such was the case, this court could not have acquired any jurisdiction over the cause.
If what I have heretofore said is correct, that this court cannot act on an inferior jurisdiction by advice merely, it then follows that what was said in that case was no more nor ■less than an adjudication, or opinion of this court, that the oyer and terminer had power to order a new trial when the verdict is against evidence. The marginal note shows that such is the understanding of that case. Judge. Radcliff, who was on the bench of the supreme court when the question in Townsend’s case was before it, observed, in giving his opinion in the case of Noah, 3 City Hall Recorder, 24, that he thought it could not be denied that courts of oyer and terminer possess the power to grant new trials, without express authority ; and that it was virtually decided so in the case of Townsend. He went much farther, for he claimed this power for the general sessions of the peace in the city of New-York, and exercised it, on the ground that the sessions in that city was no longer to be regarded as a court of inferior jurisdiction, because it had been invested with the power to hear, determine, and adjudge all crimes and misdemeanors committed in that city (cases affecting life only excepted) in as full and ample a manner, as any court of oyer and terminer and goal delivery might or could do. He decided that the sessions by obtaining a part only of the powers of the oyer and terminer, was raised from the condition of a court of inferior jurisdiction, and thereby acquired the power to grant new trials on the merits.
Upon principle and authority, I have no doubt but the power to grant a new trial on the merits, resides in the courts of oyer and terminer and gaol delivery.