The People *v.* Morrison.

---

GREENE OYER AND TERMINER. December 1854. Before *Harris*, Justice of the Supreme Court and the Justices of the Sessions.

## THE PEOPLE *vs.* MARTIN MORRISON.

A court of Oyer and Terminer has power to grant a new trial on the merits, after a defendant has been convicted of a felony.

The cases of *The People* v. *The Judges of the Dutchess Oyer and Terminer*, (2 *Barb. Sup. Court R.* 282,) and the *United States* v. *Gilbert*, (2 *Sumner*, 19) reviewed and disapproved.

The question, whether the court of Oyer and Terminer is a Superior Court of general jurisdiction, discussed.

To warrant a conviction for rape, under the 2d sub. of § 22, (2 *R. S.* 663,) it ought to appear that there was the utmost reluctance and the utmost resistance on the part of the prosecutrix.

VOL. I. 79

The defendant was tried at the Greene Oyer and Terminer, held in April, 1854, Harris, J., presiding, for the crime of rape, and convicted. Upon the application of the defendant's counsel, sentence was suspended, and, at an adjourned session of the court, held in May following, a motion was made for a new trial, upon the ground that the verdict was against the weight of evidence. The facts will sufficiently appear in the opinion of the court.

*P. C. Mattoon,* (Dist. Att'y,) and *M. Sanford,* for the people

*L. Tremain,* for defendant.

*By the Court,* HARRIS, J. — The power to grant a new trial either in civil or criminal cases, constituted no part of the jurisdiction of the court at common law. The first reported case of a new trial being granted, upon the merits, is that of *Wood* v. *Gunston, in* 1655, (*Style,* 466,) where, in an action of slander, the verdict was set aside and a new trial awarded on the ground of excessive damages. Indeed, in that case, the decision was put upon the misbehavior of the jury. It was regarded rather as a case of irregularity, than an application for a new trial upon the merits. Just before this, it had been said by Rolle, J., in *Slade's case,* (*Style,* 138,) that the only remedy for the party, complaining of the injustice of a verdict, was to attaint the jury. (*See* 3 *Bl. Com.* 388.) It was not until the time of Lord Mansfield that the power of the common law courts to grant a new trial in any case where it was necessary for the attainment of justice was fully established. (*See Bright* v. *Eynon,* 1 *Burr,* 394; *Vernon* v. *Hankey,* 2 *Term R.* 113.) In the latter case, decided in 1787, and during the last of the thirty-two years that Lord Mansfield presided in the court of King's Bench, Buller, J., said, " motions for new trials have been very much encouraged of late years, and I shall never discourage them, for nothing tends more to the due administration of justice, or even to the satisfaction of parties themselves." And, in the former case, Lord Mansfield himself

The People *v.* Morrison.

said, " Trials by jury in civil cases could not subsist now, without power somewhere to grant new trials. A general verdict can only be set right by a new trial, which is no more than having the cause more deliberately considered by another jury when there is reasonable doubt, or perhaps a certainty that justice has not been done. The writ of *attaint* is now a mere sound in every case." And again he says: " It is abso·lutely necessary to justice that there should, upon many occa-sions, be opportunities of reconsidering the case by a new trial."

But in criminal cases, where the offence amounts to a felony, a new trial is not granted in England. The same. end is accomplished in another and more summary way. The entire separation of judicial and executive powers, which is so pro-minent a characteristic of both the state and federal govern-ments of the United States, is not found in the British con-stitution. On the contrary, the king is regarded as the fountain of all justice as well as mercy, and the judiciary but his ministers to dispense his judgments. While, in the United States, the pardoning power can only be exercised after con-viction, in England, there is no such restriction. The king may pardon before trial, and even before indictment. The accused, upon being arraigned, may plead a pardon of his crime. " This," says Blackstone, " is indeed one of the great advantages of monarchy in general, above any other form of government — that there is a magistrate, who has it in his power to extend mercy wherever he thinks it is deserved; hold-ing a court of equity in his own breast, to soften the rigor of the criminal law in such criminal cases as merit an exemption from punishment." (4 *Bl. Com.* 397.) If, upon a criminal trial, the presiding judge is in doubt upon a question of law, he reserves it for the consideration of all the judges. If he is dissatisfied with the decision of the jury, he suspends sentence, or may reprieve the prisoner, and reports the case, with his recommendation, to the ministers of the crown. Such recom-mendation is never disregarded. The punishment is modified, or the accused is wholly discharged, according to the views the

judge may entertain of the merits of the case. Under such a
system, a second trial can never be necessary. The prisoner
can never be punished unless the court agree with the jury in
the justice of their verdict. Where this is not the case, the
court takes the matter into its own hands, and, through the
instrumentality of the crown, modifies the punishment or dis-
penses with it altogether, according to its own notions of
justice, uncontrolled by the verdict. Thus, all the advantages
which could be secured to the party accused by granting him
a new trial are attained without the intervention of a second
jury.

It is quite unnecessary to say that nothing analogous to this
practice has ever found its way into the criminal jurisprudence
of the United States. From its earliest history the criminal
courts, both state and federal, have assumed and exercised,
with singular uniformity, the power of granting new trials
upon the merits. After a most diligent examination, I feel
great confidence in asserting that the case reported in 2 *Barb.*
282, (*The People on the relation of Case* v. *The Judges of the
Dutchess Oyer and Terminer*,) is *the only* American case in
which it has been *adjudged* that a court of Oyer and Terminer,
or any other court of kindred jurisdiction, has not the power
to grant a new trial upon the merits. Although, from the na-
ture of criminal trials, it is not often that they find their way
into judicial reports, yet there are reported cases in this state,
and in most, if not all the other states, and in the criminal
courts of the United States, where this power has been asserted
without hesitation, and freely exercised. And whenever it has
been denied or doubted, with the exception of one or two cases
which I shall have occasion to notice presently, it has been
vindicated and maintained. I am confident, too, that there are
but few lawyers of extended experience, who can not call to
mind instances of unreported cases in which new trials have
been granted upon the merits, in criminal cases. It is true that
in 1799, the Supreme Court of this state granted a mandamus
to compel the court of General Sessions in Chenango to proceed
to sentence a prisoner who had been convicted of felony, al-

The People *v.* Morrison.

though that court had awarded a new trial on the merits, the conviction being, in its judgment, against the evidence. The court there say that, in cases of felony, considerations of policy and expediency would prevent the Supreme Court itself from granting a new trial, and that, in such cases, the usual course was to recommend the convict for pardon. *The People* v. *Justices of Chenango*, (1 *John. Cases*, 179.) Were it at all to my purpose, I think it might be shown that the arguments by which the court reached the conclusion that the General Sessions had not the power to grant a new trial when the verdict was against evidence, are unsound. But it is enough to say, that the court, while referring to the " policy and expediency" of granting a new trial does not deny or question its power. This power had been exercised but two terms before, in the case of *The People* v. *Townsend*, (1 *Johns. Cases*, 104.) In *The People* v. *Stone*, (5 *Wend.* 39,) the question was fully considered, and it was held, upon both principle and authority, that courts of Oyer and Terminer have the power to grant new trials upon the merits. Marcy, J., in delivering the opinion of the court, says: " The policy, in respect to new trials in criminal cases, which the English courts have pursued has never been countenanced by our courts, and would never be tolerated by our people." But in *The People* v. *Comstock*, (8 *Wend.* 549,) which came before the court two years after the decision in *The People* v. *Stone*, upon an application for a new trial, after the defendant had been *acquitted*, Sutherland, J., has unfortunately cited the English rule on the subject of new trials in criminal cases, as if no distinction existed in the practice in the two countries. He refers to the rule as stated by Chitty, in his Treatise on English Criminal Law, and quotes from the argument of counsel and the opinion of the court, in *The King* v. *Mawbey*, (6 *Term Rep.* 625,) but takes no notice of any of the American cases, not even of *The People* v. *Stone*, in the decision of which he had himself so recently concurred. The question was not in judgment at the time. The principle that, having been once acquitted, he should not again be put in jeopardy secured the defendant against another trial. The court had no occasion,

therefore, to refer to the question whether, after a conviction, it had the power, upon the application of the prisoner, to set aside the conviction and award a new trial. It is quite evident, I think, that having thus incidentally, if not inadvertently, stated the English doctrine on the subject of new trials in criminal cases, it did not occur to the learned judge to notice the distinction between that and the American practice, which he had himself so recently recognized.

And yet, strange as it may appear, this case has been made to contribute largely to the work of unsettling the law on the subject now under consideration. "In the case of *The People* v. *Comstock,*" says Mr. Justice Story, in *The People* v. *The Judges, &c.* (2 *Barb.* 291,) the late Supreme Court, in effect, overruled the decision in *The People* v. *Stone,* and followed the common law rule; that being the latest decision on the subject, is of course entitled to the greatest weight." ⁎And, again, the same judge, in the same opinion, relying upon the *dictum* of Mr. Justice Sutherland, as he must have done, for it is the only instance in which the power in question has been denied or doubted, says: " The decisions of the late Supreme Court, on the question now under consideration, have not been uniform, and we are at liberty to adopt such rule as we think the law requires, without a material departure from the principle ' *stare decisis.*' " Thus, an inconsiderate remark in *The People* v. *Comstock,* upon a subject inapplicable to the question then before the court, has been made to serve the purpose of opening a question of criminal law which had been settled by an uninterrupted course of decision and practice reaching back as far as our judicial history will carry us. Finding the question thus open, the court, in *The People* v. *The Judges, &c.,* felt itself at liberty to examine it anew and " to adopt such rule as it should think the law required."

In other states, the power has been maintained with the same uniformity and distinctness. " In Pennsylvania," says Wharton," it has been the constant and unquestioned practice in the court to exercise the right of granting new trials in criminal cases after conviction of every grade." (*Wharton's Am. Cr.*

The People *v.* Morrison.

*Law,* 2d ed. 873.)  In support of this proposition he refers to *Com. v. O'Hara,* 7 *Smith's Laws,* 694; *Com.* v. *Brown,* 3 *Rawle,* 207; *Com.* v. *Green,* 1 *Ashmead,* 289; *Com.* v. *Murray,* 2 do. 41; *Com.* v. *Williams,* 2 do. 69; *Com.* v. *Hanagan,* 7 *Watts & Serg.* 415; *Com.* v. *Harman,* 4 *Barr,* 269; *Com.* v. *Moslee, ibid,* 264.

In *New Jersey,* new trials are granted upon the merits, in criminal cases, even by courts of inferior jurisdiction.  In *The State* v. *Parker,* (1 *Halstead,* 148,) an attempt was made, as in *The People* v. *The Justices, &c., of Chenango* (1 *John. Cases,* 179,) to compel a court of sessions to proceed to render judgment upon a verdict of guilty, notwithstanding a rule for a new trial.  The Supreme Court denied the motion for a mandamus, on the ground that the right to grant a new trial had been exercised so long, that, even if it had been questionable at the first, it would be inexpedient to deny it now.

" In Kentucky," says M'Lean, J., in *The United States* v. *Keen,* ( 1 *M'Lean,* 429,) " new trials are often granted in capital cases.  They are not reported, as such trials take place in the circuit court, and the right in the court to set aside a verdict of guilty seems never to have been doubted.  And, indeed, this may be said of *Ohio.*"  So, also, in *Indiana.* (*See Jerry* v. *The State,* 1 *Blackford,* 396; *Weinzorpflin* v. *The State,* 7 *Blackford,* 186.  In *Illinois: See Baxter* v. *The People,* 3 *Gilman,* 368; *Holliday* v. *The People,* 4 do. 111; *Pate* v. *The People,* 3 do. 644.)  In the latter case, the defendant, having been convicted of forgery, moved for a new trial, on the ground of newly discovered evidence, and also because the verdict was against evidence, and the circuit court having denied the motion, a writ of error was brought to the Supreme Court.  Treat, J., in delivering the opinion of the court, said: " In criminal cases, motions for new trials rest entirely in the discretion of the courts where they are made and the propriety of their decisions in refusing them can not be reviewed in this court."  In *Iowa,* it has been held that it is the duty of the court to interfere and grant a new trial where it thinks manifest injustice will be done by giving effect to the verdict; that the application for a new

trial, when based upon the facts, is addressed to the sound discretion of the court. (*Cook* v. *United States*, 1 *Green.* 56.)

In *Virginia*, the question was thoroughly examined in the case of *Ball* v. *The Commonwealth*, (8 *Leigh.* 726.) The prisoner had been convicted of murder in the second degree. A motion for a new trial was made before the court in which the trial was had, but the judge, being of opinion that the power of granting a new trial was clearly denied by the principles and practice of the English law, and was not warranted by any statute of Virginia, or the authority of any adjudicated case, denied the motion. The case having been brought before the *General Court*, upon exceptions to the opinion of the court below, the judgment was unanimously reversed and a new trial granted, upon the ground that the evidence was insufficient to warrant the verdict. Fry, J., in delivering the opinion of the court, said, "Without deciding whether it is proper for this court to review the judge's opinion of the evidence, or that it was proper to certify the fact, we proceed to inquire whether it is in the power of the judge, in a case of felony, to grant a new trial after conviction, where he is satisfied that the evidence is utterly insufficient to warrant the finding. Having stated the English rule that a new trial can not be granted in any case of treason or felony, he asks, " Is this principle a part of the common law with us, and are the courts of this state bound by it? We are all of opinion that it is not, and that our courts are not bound to follow it. It is believed that a contrary practice has long prevailed in this state; many new trials are remembered by some of the judges, and we think this practice is suitable to our constitution and laws and agreeable to justice and humanity." The judge who had decided the case in the court below concurred in the judgment; and, in a later case, the court said, "Where the finding of the jury is clearly against evidence, or without evidence to justify it, it is the duty of the court to set the verdict aside, upon the application of the prisoner, and to grant a new trial. (*McClure* v. *Com.* 2 *Robinson*, 790; *see also Grayson* v. *Com.* 6 *Gratt*, 712.)

In *North Carolina*, a new trial was granted on the ground

of newly discovered evidence in a case of perjury as early as 1795, (*State* v. *Greenwood,* 1 *Hay,* 141.) " Instances of new trials for felonies, in that state," says Wharton, " are frequent, on account of mistake of law or irregularity in trial." (*See State* v. *Miller,* 1 *Dev. & Bat,* 500; *State* v. *Barton,* 2 *do.* 196; *State* v. *Sparrow,* 3 *Murphy,* 487; *State* v. *Lipsey,* 3 *Dev* 485.)

In South Carolina, a new trial was granted in a capital case in 1794, in a court in which Judge Rutledge, afterwards chief justice of the United States, presided. It is true, as was said by Justice Story, in *The United States* v. *Gibert,* (2 *Sumner,* 54,) that " no point was made at the argument as to the power of the court to grant a new trial, and that it was silently taken for granted on all sides." But it is also true, as is well remarked by Wharton, that " the precedent has since been acquiesced in and enforced by a court, the learning and sagacity of whose judges forbid the supposition that they were ignorant of the existence of the English practice or of the consequences of overturning it." (*Wharton's Am. Cr. Law,* 374; *see State* v. *Fisher,* 2 *Nott & McCord,* 26; *State* v. *Lines,* 2 *Bailey,* 29; *State* v. *Anderson,* 2 *do.* 565; *State* v. *Hooper,* 2 *do.* 37.)

In *Georgia,* the right of the presiding judge before whom a conviction has been had, to entertain a motion for a new trial has never been questioned. When, in the exercise of his discretion, he has denied such a motion, " it must be a very clear case of error in law," say the court, in *Jones* v. *The State,* (1 *Kelly,* 610,) " or a very naked, bald case as to the facts, which will authorize the court to control that discretion in a criminal cause." (*See also McLane* v. *The State,* 4 *Geo.* 335; *Roberts* v. *State,* 3 *Kelly,* 310; *Giles* v. *State,* 6 *Georgia,* 276; *Alfred* v. *The State,* 6 *do.* 483.)

In *Tennessee,* new trials have been constantly granted in criminal cases when the verdict, in the opinion of the court, is not warranted by the proof. (*Davis* v. *State,* 2 *Humph.* 439; *Kirby* v. *State,* 3 *do.* 289; *Bedford* v. *The State,* 5 *Humph.* 552; *Copeland* v. *State,* 7 *do.* 479; *Cochran* v. *State,* 7 *do.* 544; *so,*

The People *v.* Morrison.

*also, in Mississippi,* (*see Kethler* v. *State,* 10 *Sme. & Marsh.* 192.)

In *Massachusetts,* the question was thoroughly examined in the case of *The Commonwealth* v. *Green,* (17 *Mass.* 514.) The case was argued for the commonwealth by both the solicitor general and the attorney general. The opinion of the court was pronounced by Ch. J. Parker. His conclusion was, that the court had power to grant a new trial on the motion of one convicted of a capital offence, sufficient cause being shown therefor, notwithstanding the superior courts were supposed not to exercise such authority.

In *Connecticut,* the supreme court, in granting a new trial in *The State* v. *Lyon,* (12 *Conn.* 487,) which was a case of arson, said that the power to grant a new trial might be exercised, when the verdict was without evidence, or was manifestly against the weight of evidence.

In *New Hampshire,* a new trial was granted in a case of murder. (*The State* v. *Prescott,* 7 *N. Hamp.* 287.) The court said, " No question of the right of the court to grant the prisoner a new trial has been raised upon the argument, nor have the court any hesitation upon the subject. The prisoner was entitled to a fair and impartial trial, and if, in any respect, this right has not been secured to him, God forbid that he should be sent to pray of the mercy of the executive a pardon for an offence of which he has not been legally convicted.."

In *Alabama,* in a case which came before the court upon an application for a new trial after a conviction for murder, the opinion of Mr. Justice Story was relied upon in opposition to the motion. The court, after referring to the practice of the English courts, said, " It does not, however, follow that it is against the principles of the ancient common law that the court should have power to grant a new trial where a doubt exists as to the correctness of the verdict. It would seem to be more consistent with the spirit of humanity which pervades it, that a new trial should be granted by the court, than that the prisoner should depend on the mercy of the executive." (*State* v. *Slack,* 6 *Alabama,* 676.)

Thus it appears that in *eighteen* states the power to grant new trials in criminal cases has been asserted and maintained. I have not had access to the reports of the other states, but I have no reason to believe that this singular uniformity of decision and practice has been departed from, in a single instance, in any other state.

The same doctrine is held, too, in the federal courts. It is true that in *The United States* v. *Gibert*, (2 *Sumner*, 19,) Mr. Justice Story has argued, at great length, to show that, where a trial has been regularly had, before a court of competent jurisdiction, upon a good indictment, and a verdict has been regularly rendered by a competent jury, the party can not be tried a second time. That distinguished judge thought the provision of the constitution which adopts the maxim of the common law that a man shall not be twice put in jeopardy of life or limb for the same offence, presented an insurmountable barrier to a second trial, even upon the application of the defendant himself. But, in the same case, Judge Davis, though he concurred in denying a new trial upon the merit, dissented from that part of the opinion which denied the power to grant a new trial upon the merits. He was of opinion that the provision in the constitution was intended for the security and benefit of the party accused, and that, as such, it might be waived. One of the most eminent lawyers in the United States has denominated this opinion of Mr. Justice Story as " an extra judicial dissertation of a single judge which has caused the whole disturbance of our criminal system in this matter." And he adds, that it is a dissertation, " not close in point of argument, and far from being either respectful or accurate in the consideration of authorities." (*United States* v. *Harding*, 1 *Wallace, Jr.*, 127, *per David Paul Brown, arguendo.*) In the latter case, three defendants had been jointly indicted for murder; one had been convicted of *murder*, and the other two of *manslaughter*. They all applied for a new trial, which was granted, although the effect was again to expose them all to a conviction for murder. Kane, district judge, delivered the opinion of the court. In noticing the opinion of Mr. Justice

Story on the question he said: " I am aware tl at one  f the most eminent of our jurists has found an inhibition in the constitution against the grant of new trials in cases involving jeopardy of life.  But I can no realize the correctness of the interpetration which, anxious to secure a citizen against the injustice of a second conviction, requires him to suffer under the injustice of the first.  Certainly I would not subject the prisoner to the hazards of a new trial without his consent.  If, being capitally convicted, he elects to undergo the sentence, it may be his right, as it was to have pleaded guilty to the indictment. When, however, he asks a second trial, it is to relieve himself from the jeopardy in which he is already, and it is no new jeopardy that he encounters when his prayer is granted, but the same, divested of the imminent certainty of its fatal issue." Again, he says: "Within the limits of this circuit at least, from the earliest judicial date to the prese t time, there has been no recorded case in which a new trial has been refused for the want of authority in the court to grant it."  He might have safely added, I think, that no such case had occurred within the courts of the United States, for the case of *The People* v. *The Judges, &c.* (2 *Barb.* 282,) had not then been decided.  It is proper to state that Mr. Justice Grier, of the Supreme Co rt of the United States, concurred in the opinion of Judge Kane, in *The United States* v. *Harding.*

In a case which occurred in the same district, at a very early period in the judicial records of the country, a new trial was granted in a case after a conviction for treason, Iredell, then one of the justices of the Supreme Court of the United States, presiding, Rawles, district attorney of the United States, and Sitgreaves appeared as counsel for the government.  They conceded, in arguing, that the power to grant a new trial in a capital case could not be denied.  (*United States* v. *Fries,* 3 *Dallas,* 515.)  Judge Story, in noticing this case, admits that it is an authority directly in point, but he thinks there are circumstances in the case which greatly weaken if they do not impugn its authority.  " The clause in the constitution of the United States," he says, "was not even alluded to, much less

The People *v.* Morrison.

reasoned out. The court did not, in giving their judgment, in any manner speak to the point. The judges were divided in opinion as to the propriety of granting a new trial for the cause shown, but Judge Peters yielded and acquiesced in granting the new trial. Now, under such circumstances, it is not too much to say, that the court might have been surprised into the decision." " This, truly," says the distinguished counsel whose name I have already mentioned, " is to make trim reckoning of a judicial adjudication." And I have only to say, that, if in 1795, judges and counsel like those in that case— men, all of them, of education and understanding, bred in the apostolic age of our country, and breathing the air of the constitution when it imparted every where its energy and spirit, could not, any of them, see, in that constitution, aught which touched the case before them, then that no such thing existed there; or, at any rate, it will not be given to either judge or counsel in these later days to discover it.

Mr. Justice Story himself, in the following year after the trial for piracy, reported in *The United States* v. *Gibert*, seems to have lost sight of his constitutional impediment in the way of a new trial in criminal cases, for, in the case of *The United States* v. *Battiste*, (2 *Sumner*, 240,) when arguing against the right of the jury to determine the law for themselves, he says, "If the court should err, in laying down the law to the jury, there is an adequate remedy for the injured party, by a motion for a new trial, or a writ of error, as the nature of the jurisdiction of the court may require." Now, if, as the learned judge had so earnestly contended, in *The United States* v. *Gibert*, the constitution when it declares that no person shall be subject, for the same offence, to be twice put in jeopardy of life or limb, means " that no person shall be tried a second time for the same offence, where a verdict has already been given by a jury," how could he say, as he did in *The United States* v *Battiste*, that if the court should err, in laying down the law to the jury, there was an adequate remedy for the injured party, by a motion for a new trial, or a writ of error?

In *The United States* v. *Keen*, (1 *M'Lean*, 429,) Mr. Justice

The People *v.* Morrison.

M'Lean has most emphatically repudiated the construction of the constitution for which Mr. Justice Story so earnestly contends: " In favor of life," he says, " presumptions arise which seem to relax, and in fact sometimes do relax the rigor of the law. But, in the construction contended for, this maxim is reversed. The prisoner is found guilty by the jury, and, whether right or wrong, he must stand convicted. He claims, under the constitution, a fair and impartial trial, and he shows gross prejudices against him by the jury who have convicted him on testimony wholly insufficient. But he is answered that the constitution protects him from being put in jeopardy a second time for the same offence, and that a new trial would violate this provision. In other words, the constitution guarantees to him the *right of being hung* to protect him from the danger of a second trial. Whatever may be said, theoretically, of such a constitutional protection, practically, the subject of it can have no very strong reason to appreciate it." In *The United States* v. *Conner,* (3 *M'Lean,* 573,) the same judge granted a new trial in a case of perjury. The motion was opposed on the ground that the circuit judge had no power to grant a new trial in such a case, but the court said the question had been considered and decided, and would not again be examined; that there could be no doubt that the court might, on cause shown, grant a new trial in any criminal case.

Indeed, upon the question of constitutional construction, Mr. Justice Story stands alone. Not a judge of any court in the United States has been found to concur in his views. Even Mr. Justice Strong, while he denies the power of the court to grant a new trial, does not venture to put his judgment upon the ground of constitutional prohibition. Our state constitution, like that of the United States, declares that " no person shall be subject to be twice put in jeopardy for the same offence. (*Const. of* 1847, *Article* 1, § 6.) Mr. Justice Strong, like every body else, except Judge Story, regards this provision as applicable to a case of acquittal. "If the accused is *acquitted,*" he says, " however conclusive the evidence may have been against him, the public are precluded, by a provision of the constitution

The People *v.* Morrison.

from obtaining a new trial. Were it otherwise—if the constitution of the United States, or of this state, is to be regarded as prohibiting a new trial, whether the accused is acquitted or convicted—it is obvious that the provisions of the revised statutes authorizing the Supreme Court to review the decisions of a court of General Sessions or Oyer and Terminer, upon a bill of exceptions, are in conflict with this inhibition, and should be declared void. I presume no one would be found with sufficient courage to maintain such a proposition.

Mr. Justice Strong, in the case of *The People* v. *The Judges of the Dutchess Oyer and Terminer*, has drawn an argument against the power of the court to grant a new trial, from the fact that the legislature has seen fit to confer that power upon the Supreme Court, in certain cases, and omitted to grant it "in any other case or to any other court." His inference is, that the legislature intended " to adhere, in all other respects, to the common law rule." But I can not subscribe to the soundness of this argument. I deny that the inference is legitimate. When the provisions of the revised statutes were adopted, the power of the American courts to grant new trials in criminal cases had never been denied. It needed no legislative enactment to justify them in exercising this undisputed right. Courts proceeding according to the course of the common law, had been in the practice of granting new trials upon the merits, both in civil and criminal cases, as a necessary incident of their jurisdiction. But, as it had been found inexpedient to provide for a review of the decisions of the court exercising original jurisdiction upon questions of law in civil cases, so also it was thought that the protection of the rights of the citizen required that he should not be concluded by the law as declared by the court in which he had been tried, but that he might have a review upon exceptions and writ of error. It was a privilege to the party who had been convicted, superadded to the right he before possessed of applying to the court in which he had been tried for a new trial upon the merits.

I do not deem it very important to determine whether a court of Oyer and Terminer should be regarded as an *inferior* or a

*superior* court, or whether or not it is a court of *general* juris-
diction. I do not perceive how this question involves the power
to grant a new trial. It certainly has power " to hear and de-
termine all crimes and misdemeanors." It is the only court of
original criminal jurisdiction that possesses such power. If a
court is to be classified as *superior,* when there is no court of a
higher grade of kindred jurisdiction, then the Oyer and Term-
iner is a superior court. There is no court above it exercising
original criminal jurisdiction; nor can this question be affected
by the fact that a judge of the Supreme Court, who is also a
judge of the Oyer and Terminer, may by allowing a *certiorari*
transfer the trial from the Oyer and Terminer to the Supreme
Court. All that this proves is, that after the criminal action
has been instituted, another court has concurrent jurisdiction
with the Oyer and Terminer to try the issue and render judg-
ment.

Nor can I see that the question is much affected by the fact
that the Oyer and Terminer is limited in its jurisdiction to
crimes and misdemeanors committed within the county where
it is held. The Supreme Court is undeniably a superior court
of general jurisdiction, and yet the court in which Mr. Justice
Strong sat when he laid down the rule that " a superior court
of general jurisdiction must have full cognizance of one at least
of the principal departments of the law *throughout the state,*
had not such full cognizance. It had no jurisdiction over any
matter or proceeding pending without the limits of the second
judicial district. This fact, however, does not tend to show
that the learned judge was not then presiding in a superior
court of general jurisdiction. He was. The court was not the
less a court of general jurisdiction, because, in territorial ex-
tent, its jurisdiction was not coextensive with the state.

Upon authority, I regard the power of the court to grant
a new trial as established beyond all possible controversy. But
if the adjudged cases had been found conflicting to such an
extent as to require that general principles should be resorted
to, I should have no hesitation in pronouncing in favor of the
power. Where the court is satisfied that injustice has been done

The People *v.* Morrison.

upon the trial of a civil action, it will not hesitate to set aside the verdict and order a retrial. The most obvious principles of common justice require it. If this should be done when the action only involves the right to land or money, how much more when liberty or life itself is at stake? To refuse, in such cases, to allow the defendant the benefit of the same principles which are applied in civil actions, is to deprive him of a legal right; to deny him a fair and impartial trial. It is but a pitiful substitute for the court, conscious as it may be that great injustice has been done by the verdict, to say to the accused that he can not have a new trial, however well he may be entitled to it, but that he must apply to the executive for pardon, adding, perhaps, in the language of Mr. Justice Story, that the court, if *conscious of any serious error.* would cheerfully aid in the application." To address language like this to a man unjustly convicted would seem like mockery of his wrong.

But suppose that even though the court, "conscious of serious error," should " aid in the application," the executive should refuse to pardon? Is the prisoner, though unfairly tried, and perhaps innocent, to be hung? Is he, though it is seen that he has been convicted through the mistake or misapprehension of the jury, or perhaps under the influence of passion or prejudice, to endure the penalty of crime without redress? It may be said that I am supposing an extreme case. This may be so. It is undoubtedly a rare thing for a jury to convict against the weight of evidence. Mr. Justice Strong says, in the opinion to which I have already had occasion to refer, that in a practice of twenty years as public prosecutor, he did not recollect an instance. It is possible that the learned judge might have thought otherwise, had he looked on from a different point of observation. It will be admitted that such cases may happen, and this is enough for my purpose; upon such a question extreme cases may well be supposed. Again, I ask, what is to be done where such a case does happen? The court believe the accused innocent, and yet the jury have pronounced him guilty. The executive certainly is not bound to interpose for the relief of the court. Its office is, not to reverse unjust decisions, but

to remit punishment due to the guilty. The very idea of *mercy* implies guilt. An innocent man needs no mercy Let him but have justice and he is safe. A pardon, therefore, is not the appropriate remedy for an erroneous or unjust conviction. Justice can only be effected by granting a new trial. The power to set aside such a conviction is, therefore, indispensable.

· The question whether a motion for a new trial in criminal cases ought not to be entertained has become the subject of discussion even in England. Commissioners appointed to revise the criminal laws, in a report recently made to parliament, an extract from which may be found in Waterman's edition of Archbold's Pleadings, (*vol.* 1, *page* 177, *note*,) have expressed a decided opinion in favor of a modification of the existing law on this subject. "It appears to us," they say, "that the law of England is at present very defective as regards the means afforded for the correction of errors in criminal proceedings. And especially such as are frequently, and indeed are almost necessarily incident to the trial by jury. In this respect, indeed, the law is inconsistent in entertaining the motion for a new trial in some instances, and denying it to others, without any adequate reason for the distinction, and is thus faulty, either in denying a new trial where it would be consistent with justice to grant one, or in granting a new trial where it ought properly to be withheld. We can not but observe that the distinction made between indictments for felony, and those for misdemeanor, is one not warranted by any intelligent principle."

Again they say: "Looking at the nature of the inquiry, it is quite as likely that error or mistake should occur in the investigation on a criminal charge, as on that of a mere civil claim. As regards the consequences of error in the one case and the other, it can not be denied that a failure of justice in a criminal case, where it may concern not only property, liberty, but even life itself, is of much more serious importance than in civil cases, where a mere question of property is concerned. The law in this respect is at variance with itself, and several evil consequences naturally result. Great injustice is often done to

The People *v.* Morrison.

an innocent party who, but for the technical rule, would entitle himself to a new trial, for it can not be doubted that cases not unfrequently occur, when the convict is either altogether innocent or not guilty of the aggravated offence charged."

Convinced as I am that the inconsistency of which these commissioners complain never found its way into the criminal jurisprudence of the United States, and that the power to grant a new trial for the purpose of correcting errors or mistakes either of the court or jury, is as clear and undoubted in criminal cases as it is acknowledged to be in civil actions, it is only necessary to inquire whether we have before us a proper case for the exercise of that power.

Both parties to the transaction were respectable. The defendant at the time of the trial was supervisor· of the town in which he resided, and the father of the prosecutrix was a magistrate of the same town. The prosecutrix herself, at the time of the alleged offence, was but sixteen years old and the defendant about twenty-five. They had attended a party at the house of a neighbor, and the prosecutrix, upon the invitation of the defendant, rode home with him on horseback. The house of her father stands some fourteen rods from the road. The prosecutrix testified that when they reached the gate or bars the defendant hitched his horse, and they went towards the house together, the defendant having his arm around her waist; that after they had proceeded a short distance, the defendant proposed to her to go aside from the path, but she declined, saying she was going to the house; that he then pulled her a few steps aside from the path, and, with his arms around her waist, laid her upon the ground, and then had connection with her. She made no outcry, nor did she pretend that she made any resistance. She stated that she told him to let her go, and that she tried to get away; that after he had raised her clothes and lay upon her person, he put his mouth upon hers; that she made no outcry before he did this, but she did halloo once before she left the ground; that she was not upon the ground to exceed *a minute.* The prosecutrix was herself a strong, healthy girl. The family, consisting of her father, two brothers, and a lad

sixteen years old, together with several females, were in the house at the time. They were in the front part of the house where a light was burning.

To constitute the crime for which the defendant was tried, there must be an unlawful and carnal knowledge of a woman *by force* and *against her will.* There must be " the utmost *reluctance* and the utmost *resistance.* It was well said by Cowen, J., in *The People* v. *Abbott,* ( 19 *Wend.* 192), " a *mixed case* will not do. The connection must be absolutely against the will." In this case there was no great inequality of strength between the parties. The prosecutrix, if she *was* the weaker party, was bound to resist to the utmost. Nature had given her feet and hands with which she could kick and strike, teeth to bite and a voice to cry out; all these should have been put in requisition in defence of her chastity. I can not see that any thing like this was done. The girl herself does not pretend that she made any physical resistance, and, according to her own account, the only outcry she made was after the offence had been committed. No marks of violence were left upon her person, and she did not disclose what had occurred until several days after. It was proved, too, on the part of the defence, that the sister to whom she made the disclosure, had said that she did not suppose that the prosecutrix would ever have told what had happened if she had supposed the defendant could be hurt for it. Upon a state of facts like this, I can not concur with the jury in pronouncing the defendant guilty of a rape. He may, indeed, be guilty of seduction, an offence kindred in morals, but by no means the same in law. The verdict is not sustained by the evidence, and a new trial must be granted.