PEOPLE *v.* LOFTUS.

(*Supreme Court, General Term, Fourth Department.*  November, 1890.)

1. RAPE—EVIDENCE.

At a trial for rape, prosecutrix testified that the offense was committed on January 31, 1886; that she had connection with him again on one occasion; and that she

told no one what had occurred until September, 1887, when she told her sister. *Held*, that the admission in evidence of this disclosure was error, it being too remote from the alleged offense.

2. SAME.

Evidence of her pregnancy at the time of making such admission had no relevancy to the crime charged, and was reversible error.

Appeal from court of sessions, Broome county.

Indictment charging Owen H. Loftus with having committed rape, in the town of Windsor, Broome county, on the 31st day of January, 1886, upon one Mary A. Madden, she being a female, not the wife of defendant, of the age of 23 years at the time. Defendant was called as a witness, and under oath testified that he was not guilty of the offense charged. The jury found a verdict of "guilty of assault in the second degree." From the judgment entered on the verdict, and from an order denying a motion for a new trial, made on the ground that the verdict was against the weight of evidence, and on the merits, and on the exceptions taken during the trial, defendant appeals.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*Edmund O'Connor*, for appellant. *George B. Curtiss*, Dist. Atty., for the People.

HARDIN, P. J. Complainant testifies that she first met the defendant at Starrucca, Pa., about seven miles from her home, on the 1st day of January, 1886, being then introduced to him at a dance, and that she accompanied him on the 29th of January to another dance, at Susquehannah, which was on Friday, and that he took her to her home on Saturday morning, and that on the 31st of January, (Sunday,) he drove to her house, and asked her to take a sleigh-ride with him, and that they drove from her house to Windsor, Broome county, and arrived there about 4 o'clock in the afternoon, and went to Montgomery's Hotel, and entered the parlor; that she had a glass of wine with him, and sat in the dining room by the fire for a while, and then she adds, viz.: "We went up-stairs. We went into a room. There was a bed in it. He locked the door, and removed the key, and put it in his pocket, I think. Then he took off both his coats and his hat, I think; and then he took hold of me, and threw me on the bed, and put his hand over my mouth. Then he committed an outrage on me." She says that, after remaining there a while, they were interrupted by a rap at the door, and they put their things on, and went into his sleigh together, and went to another hotel in the town, about a half a mile distant therefrom, and remained there a while, and then left that hotel. He then drove her in the sleigh some 12 miles to her home, and entered the house, and that her people were there, and a supper was prepared, and they took the same together, and that he came to see her subsequently on numerous occasions. In speaking of the transaction at Montgomery's Hotel, in her cross-examination, she said: "I first told of this transaction, I think, in 1887. * * * I told my sister of this rape before he was married. This complaint I made in Pennsylvania was simply for fornication, and he pleaded guilty, and was fined $50. * * * I told my sister about it,—my oldest sister; told her about it in September, 1887. After that time I had said nothing to her about it. My sister was the only one to whom I had ever charged this defendant of raping me until after I had made this complaint in this county. * * * I had connection twice with him. That is all. I had connection with him once down at his own house,—his mother's house. I went down there to attend a dance. Had it with him down there. * * * I did have connection with him at the Cascade Hotel, once." She testifies that he came to her house to visit her about a week after the occurrence at the Windsor Hotel; and she also testified: "From that time up, until September, I saw him frequently. He called at our house frequently to see me the following summer. I went to Forest City with my sister in the

spring of 1887, in April. During the summer of 1886, and winter of 1886 and 1887, I was keeping company with Loftus." She testifies that, at the time she told it to her sister, she was residing at Forest City, with her sister. After the evidence which we have already referred to was given, the people, in the course of her redirect examination, asked her, viz.: "What occurred about the time you told your sister?" This was objected to as immaterial and incompetent, as not in the presence of the defendant, and it cannot be evidence against him. To that objection, the counsel for the people stated what he expected to prove by the witness. The objection was renewed. It was overruled, and the defendant took an exception, and thereupon the following question was propounded: "You may state what occurred at Forest City, in connection with how you happened to tell your sister." The objections were again renewed, and overruled, and the defendant again excepted, and thereupon the following question was put to the complainant: "Go on and state what occurred at Forest City. *Answer.* On the night of the 7th of September, or the morning, the house where we lived in was burned down, and I jumped out of a window 26 feet, and on the following night I had a miscarriage, and I told my sister. I told her I would need a doctor, and I told her all about what happened at Windsor. Loftus did not come to see me after I had this miscarriage. *Q.* How long were you sick after that?" Objected to. Exception taken, and the witness allowed to answer. We think the evidence was improperly received. The disclosure was too remote from the alleged offense to be competent as corroborative evidence of the complainant at the time that the crime of rape had been perpetrated upon her. *People* v. *O'Sullivan,* 42 Hun, 653, *mem.,* (decided in this department in 1887, and affirmed in the court of appeals in 104 N. Y. 481, 10 N. E. Rep. 880;) *Baccio* v. *People,* 41 N. Y. 265; *People* v. *Clemons,* 37 Hun, 580; *Higgins* v. *People,* 58 N. Y. 377.

The fact that the complainant was, at the time she was at Forest City, pregnant, seems to have no relevancy or connection with the alleged crime. It may have improperly influenced the mind of the jury in considering the questions legitimately before them. *Anderson* v. *Railroad Co.,* 54 N. Y. 334. A careful perusal of the evidence has not led us to the conclusion that the principal crime charged in the indictment was committed. The case made by the evidence to support the principal charge is not established any more satisfactorily than was the charge in *People* v. *Morrison,* 1 Park. Crim. R. 625; *People* v. *Hulse,* 3 Hill, 316. Under such circumstances, we are not at liberty to disregard the erroneous ruling, on the ground that it did not work prejudice to the defendant. We are of the opinion that a new trial should be ordered. Conviction, orders, and judgment reversed, and a new trial ordered in the court of sessions of Broome county, to which court the proceedings are remitted. All concur.