[No. 8,554.—In Bank.]
October 5, 1882.

## A. L. DAY v. THE SUPERIOR COURT OF SAN FRANCISCO.

BANKRUPTCY—JURISDICTION.—The date of the filing of the petition becomes, after the adjudication of bankruptcy, the date from which the assignee takes all the property of the bankrupt, which was his property at that date, *but the assignee does not take anything which became the property of the bankrupt after that date;* the property subsequently acquired by the bankrupt forms no part of the estate in bankruptcy and the United States District Court has no jurisdiction over it.

APPLICATION for writ of prohibition to the Superior Court of the City and County of San Francisco. HALSEY, J.

*H. C. Firebaugh*, for Plaintiff.

The United States Bankrupt Law being still in force as to Peckerman and his property, and Peckerman's proceedings thereunder pending, as they are, the United States District Court has exclusive original jurisdiction over Peckerman and his property. (20 U. S. Stats. at Large, p. 99; *Martin* v. *Berry*, 37 Cal. 208; *Smith* v. *His Creditors*, 59 id. 267; *Ray* v. *Noseworthy*, 23 Wall. 128; *Lathrop* v. *Drake*, 91 U. S. 516; *Wilson* v. *Capuro*, 41 Cal. 545: Rev. Stats. U. S. § 563, Art. 18; *Seattle Coal Co.* v. *Thomas*, 57 Cal. 197; *Lewis* v. *Co. Clerk*, 55 id. 604.)

*H. H. Lowenthal*, for Defendant.

The property acquired by the bankrupt after the petition

is filed belongs to the bankrupt. (*In re Patterson*, 1 Bank Reg. 125.) And the mere fact that the petitioner procured an order giving him leave to sue or enforce his claim against the bankrupt firm, adjudicated as such in the United States Court, did not give them a lien upon any property acquired by them on credit from third parties subsequent to the filing of said bankruptcy proceeding in the Federal Court; nor did it give him a better or greater right or cause of action than any other creditor could enforce in our State Courts.

McKEE, J.:

In this case the petitioner asks for a writ of prohibition to forbid the defendant—the Superior Court of the City and County of San Francisco—from interfering with the interest of one Simon Peckerman in some personal property, which has been attached in a suit pending in favor of the petitioner against the said Peckerman and one Jeremiah James.

If the Superior Court is entertaining a proceeding of which it has no jurisdiction, or if, having jurisdiction, it is assuming to exercise an unauthorized power over property not subject to its jurisdiction, or which is within the jurisdiction of another tribunal, the petitioner is entitled to the writ which he asks, otherwise he is not. The question, therefore, presented to us relates simply to jurisdiction. (*Appo* v. *The People*, 20 N. Y. 531; *People* v. *Nichols*, 79 id. 582; *Maurer* v. *Mitchell*, 53 Cal. 289; *People ex rel. Brundage* v. *Sup. of Kern Co.*, 47 id. 81.)

The facts out of which the question arises are these: In the year 1872, Simon Peckerman and Jeremiah James were copartners, engaged in carrying on business by the firm name of Peckerman & James. As such they became indebted to various persons, including the petitioner, and, being unable to pay their debts in the due course of business, they, on the twenty-ninth of July, 1872, voluntarily filed their petition, in the United States District Court for the District of California, to be declared bankrupts, individually and as partners; and, on that day, they were so adjudicated. But they never received their certificates of discharge; and, pending the proceedings, the petitioner, as one of their creditors, procured, on the sixth of June, 1882, from the bankruptcy court, an order

granting him permission to enforce his claims to final judgment against the debtors.

Under that order the petitioner, on June 16, 1882, commenced a suit against Peckerman & James to recover judgment against them for the amount of his demands; and in that suit he caused to be issued an attachment, which was placed in the hands of the Sheriff of Merced county, in this State; and the Sheriff, by virtue of the writ, on June 13, 1882, seized a stock of clothing, dry goods and general merchandise, which then belonged to the said Peckerman and one Abraham Rosenthal, both of whom were, at that time, copartners and carrying on business by the firm name of Rosenthal & Co. On the fifteenth of June, 1882,—two days after the levy of the attachment upon their stock in trade, Rosenthal & Co., being insolvent, filed their petition in the Superior Court of the City and County of San Francisco, accompanied with the schedule and inventory required by the State statute of insolvency, to be discharged from their debts as insolvent debtors. Upon filing the petition the Court, by an order regularly entered, as provided by the statute, directed the Sheriff of the City and County of San Francisco to take possession of all the property of the insolvents; required all the creditors of the firm to appear on July 20, 1882, to prove their debts and choose an assignee, and stayed all suits and proceedings, including the attachment suit of the petitioner, commenced against the insolvent debtors.

This order, it is contended, the Superior Court had no jurisdiction to make so as to affect the property of Peckerman, or the suit of the petitioner against him, because the proceedings in bankruptcy against Peckerman & James, in the United States District Court, were still pending under the United States bankrupt law, which, although repealed, had been by the express terms of the repealing law, continued in force, as to proceedings commenced under it; and, being in force, it suspended the State insolvent law, so that the District Court had exclusive jurisdiction over the persons and property of the adjudicated bankrupts, Peckerman & James.

There is no doubt that the United States Court acquired jurisdiction over the property and persons of those debtors; and that it still retained that jurisdiction as far as the adjudi-

cation of bankruptcy was concerned.   All the property of the
debtors passed by the assignment, under the adjudication,
into the hands of the assignee in bankruptcy; and, in contem-
plation of law, the property was in the custody of the Court
from the commencement of the proceedings.   (*Mays* v. *The
Manufacturers' National Bank*, 64 Penn. 74.)   But the estate
consisted only of the property which the bankrupts then had.
After they had been adjudicated bankrupts and had surren-
dered all their estate for the benefit of their creditors, they,
or either of them, were left free to enter into new business
relations, and to make acquisitions of any other property;
and property thus subsequently acquired would form no part
of the estate in bankruptcy, nor be subject to distribution
among creditors under the adjudication of bankruptcy.   Such
is the law as it has been expounded by the bankruptcy courts.

 *In re Isaac Rosenfield*, 1 N. B. R. 319, the debtor, after
he had filed his petition and been adjudicated a bankrupt, en-
tered into business relations with some friends, who supplied
him with means, and others who opened for him a limited
credit, in the business of buying and selling stocks and gold
on account, in which he acquired an interest, and it was held
that the interest thus acquired did not constitute any portion
of the property of the bankrupt, nor had his old creditors any
interest in it.

 *In re C. G. Patterson*, id. 135, the debtor had filed his
petition on June 25, 1867, to be adjudicated a bankrupt; and
was so adjudicated September 12, 1867.   Intermediate the
filing of his petition and entry of the order of adjudication,
the bankrupt had borrowed five thousand dollars, which some
of his old creditors, who had proved up their debts, sought to
have made part of his estate in bankruptcy, for distribution
among his creditors, but the Court, Blatchford, Justice, held
that neither the money nor its products constituted any part
of the estate; and that the bankrupt could not be compelled
to account for either.

 "When," says the learned Judge, "an adjudication of bank-
ruptcy is made following the petition, it is then judicially es-
tablished that the proceedings in the case commenced when
the petition was filed.   The date of the filing of the petition
becomes, after the adjudication of bankruptcy, the date from

which the assignee takes all the property of the bankrupt, which was his property at that date, *but the assignee does not take anything which became the property of the bankrupt after that date.*"   Debts provable against the estate of the bankrupt must also be due or exist at that date, "subject to the special provisions of Section 19, as to contingent debts in order to be discharged.   In other words, the date of the filing by or against a debtor is the date at which, if an adjudication of bankruptcy follows, the old order of things passes away and a new leaf is turned over.   Any other construction would work injustice either to the bankrupt or his creditors.   As he can be discharged only from debts which existed on the day the petition was filed, it would be wrong to give to the creditors holding those debts property acquired by him after that day, and thus take it away from the bankrupt or from creditors whose debts, because not in existence on that day, cannot be proved against him under his bankruptcy."   (Id.)

The property acquired by Peckerman, subsequent to the adjudication in bankruptcy, and attached by the petitioner in his suit against the bankrupts, was, therefore, no part of their estate in bankruptcy, and the United States District Court had no jurisdiction over it.

The mere fact that the petitioner was proceeding under an order of that Court did not give that Court jurisdiction, nor extend its jurisdiction, over the proceedings which were commenced under the order.   The right granted by the order was one enforceable against the debtor, within the jurisdiction of a State Court, according to the laws of the State. When, therefore, the petitioner instituted his attachment suit, and levied the attachment upon the interest of Peckerman in the property acquired after the adjudication in bankruptcy, he submitted himself, as a creditor, and his rights, to the exclusive jurisdiction of the State Court; and his rights, whatever they might be, were determinable by the laws of the State.   According to those laws the rights, which he acquired by the levy of the attachment upon the property of his debtor, were inchoate and subject to be defeated by the death of the debtor, or by an adjudication of the insolvency of the debtor under the State insolvent law.   Upon the happening of either event, the attachment upon his property was dissolvable,

and the attached property would pass into the hands of the administrator in the one case, or into those of his assignee in insolvency in the other, for the benefit of his creditors. (*Myers* v. *Mott*, 29 Cal. 367; *Hensley* v. *Morgan*, 47 id. 622; *Howe* v. *Union Ins. Co.* 42 id. 528; *Ham* v. *Cunningham*, 50 id. 365; Sec. 17, Insolvent Act of 1880.)

When, therefore, Peckerman & Rosenthal, two days after the levy of the attachment upon Peckerman's interest in the property, filed their petition in the Superior Court, to be declared insolvent debtors, the Court acquired jurisdiction of the subject-matter and the parties (*Langenour* v. *French*, 34 Cal. 92); the property of the insolvents, relieved of the attachment upon it, passed into the custody of the Court for the benefit of their creditors, and thereafter the petitioner, as a creditor of one of the insolvents, and his rights, became subject to the exclusive jurisdiction of the State Court. As a creditor he was bound to seek the enforcement of his demands within that jurisdiction. The United States District Court had no jurisdiction, nor did the proceedings in bankruptcy in any way interfere with the proceedings in insolvency in the State Court.

Writ denied.

MORRISON, C. J., and ROSS, McKINSTRY, SHARPSTEIN, MYRICK, and THORNTON, JJ., concurred.